**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case Nos. 06-33124; 07-30312, 07-30313, 07-30315, 07-30113, 07-30114, 07-30115, 07-30117, 07-30118, 07-30119, 07-30120, 07-30124, 07-30125, 07-30126, 07-30127, 07-30128, 07-30129, 07-30130, 07-30131, 07-30133, 07-30134 |
| CLADDAGH DEVELOPMENT GROUP, LLC, et. al. | : | |
| Debtors | : | |
| | : | (Jointly Administered under case no 06-33124) Chapter 11 Proceeding (Judge Walter) |

TRUSTEE'S MOTION FOR ORDER: (A) AUTHORIZING AND CONFIRMING THE SALE OF ASSETS PURSUANT TO 11 U.S.C.§363(b), (f) AND (m);  AND (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C.§365

Richard D. Nelson, Chapter 11 Trustee, respectfully requests this Court enter an order (the "Sale Order') pursuant to sections 105(a), 362, 363(b), (f), and (m), 364(c)(1), 365, 1107, 1108, and 1146 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") granting the Trustee the authority to sell substantially all of the Debtors' assets, free and clear of liens, claims, interests and encumbrances, with such liens, claims and encumbrances to attach to the proceeds of sale in the same order and priority that they currently enjoy, and to assume and assign certain executory contracts and leases (the "Sale").  In support of this Motion, the Trustee respectfully states:

## BACKGROUND

1. On October 25, 2006, creditors The John F. Gallagher Company, Queensgate Food Group LLC, Economy Linen Inc.[1], and Great Lakes Concrete Restoration, Inc. (collectively the "Petitioning Creditors") filed an involuntary Chapter 11 Petition against Debtor. The Petitioning Creditors filed an Emergency Motion for Appointment of Interim Chapter 11 Trustee on October 27, 2006 (Doc. 4.)

2. The United States Trustee subsequently filed a Motion to Appoint Trustee, requesting the immediate appointment of Richard D. Nelson as Chapter 11 Trustee (Doc. 74).

3. The Estate originally included a chain of seventeen (17) "Irish Concept" restaurants, each operated by an affiliate of the Debtor CDG, LLC, and operating under the name "Claddagh Irish Pubs." On January 10 and 11, 2007, the Trustee filed Chapter 11 bankruptcies for the affiliates. The affiliated debtors are collectively referred to as "Debtors." The Trustee subsequently closed the unit in Algonquin, IL in July 2007.

4. The Trustee continues to operate the remaining 16 restaurants as going concerns and continues the administrative operation of this Chapter 11 case. To date, the Trustee has assumed thirteen leases, and rejected two. One lease is on extension, and the Estate owns the real estate occupied by one of the restaurants.

---

[1] Economy Linen Inc. has since withdrawn as petitioning creditor (Doc. 16).

5.     The Trustee received and accepted a purchase offer (the "Stalking Horse Offer") from CDG Acquisition LLC ("Purchaser") to purchase the Debtors' assets for Thirty-One Million Dollars ($31,000,000.00), consisting of Ten Million Dollars ($10,000,000.00) in cash (the "Cash Purchase Price"), plus the assumption of certain Assumed Debt and Assumed Liabilities as defined the Asset Purchase Agreement entered into between the Trustee and Purchaser (the "Stalking Horse APA").

6.     On December 13, 2007, the Trustee filed a Trustee's Motion For (1) Approval Of Purchaser's Offer To Purchase Assets As Stalking Horse Bid; (2) Approval Of Break-Up Fee To Stalking Horse Bidder; (3) Scheduling Auction For Sale Of Assets; (4) Approving Bidding Procedures For Auction Including Setting Of Initial Overbid And Subsequent Bidding Increments; (5) Scheduling Hearing On Approval Of Successful Bidder At The Auction And; (6) Setting Objection Deadline (the "Bid Procedures Motion) (Doc. # 491)**.** This Court approved the Bidding Procedures (as defined below) by Order entered January 2, 2007 (Doc. # 517)

## **JURISDICTION**

7.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C.§1334.  This proceeding is a core proceeding pursuant to 28 U.S.C.§157(b)(2)(A) and (N).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§1408 and 1409.

8. The statutory predicates for the relief sought herein are sections §§105(a), 362, 363(b), (f), and (m), 364(c)(1), 365, 1107, 1108, and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

## TERMS OF THE PROPOSED SALE

9. By this Motion, the Trustee seeks authority to sell to the Successful Bidder (as defined in the Bid Procedures Motion), selected in accordance with the bidding procedures detailed in the Bid Procedures Motion (the "Bidding Procedures"), substantially all of the tangible and intangible assets of the Debtors, free and clear of all liens, claims, interests, and encumbrances (the "Purchased Assets"), and to potentially assume certain liabilities of the Debtors (the "Assumed Liabilities") and certain of the Debtors' executory contracts and unexpired leases (the "Assigned Contracts and Leases"), as may be set forth in the Stalking Horse APA (Exhibit A) or the Modified Purchase Agreement[2].

10. In accordance with the Bid Procedures Order, the Trustee may also seek to propose and qualify an approved "Back Bidder."

11. The performance obligations of the Debtors, the Trustee, and the Successful Bidder under the Stalking Horse APA or the Modified Purchase Agreement, as applicable, are conditioned upon (a) the entry by this Court of an order approving the Bidding Procedures (the "Bidding Procedures Order"); and (b) the entry of an order by this Court approving (i) the Sale of the Purchased Assets to the Successful Bidder and (ii) the assumption and assignment to the Successful Bidder of the Assigned Contracts and Leases, all in the manner and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Motion.

subject to the terms and conditions set forth in the Stalking Horse APA or the Modified Purchase Agreement, as applicable.

### **THE SALE IS IN THE BEST INTEREST OF THE ESTATE : APPLICATION OF THE BUSINESS JUDGMENT STANDARD**

12. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." The Court's authority to approve a §363(b) sale is discretionary, and should be exercised on a case-by-case basis. Matter of Baldwin United Corp., 45 B.R. 385 (Bankr. S.D. Ohio 1984).

13. The United States Court of Appeals for the Sixth Circuit has concluded that "a bankruptcy court can authorize a sale of all of a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action." Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the rationale in Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2nd Cir. 1983). In explaining the proper role of the Court in reviewing a debtor's business judgment, one court has noted that:

> [D]isagreements over business policy are not amenable to judicial resolution. The courtroom is not a boardroom. The judge is not a business consultant. While a court may pass upon the legal effect of a business decision, (for example, whether it violates the antitrust laws), this involves a process and the application of criteria fundamentally different from those which produce the decision in the first instance. In short, the decision calls for business not legal judgment.

In re Curlew Valley Assoc., 14 B.R. 506, 511 (Bankr. D. Utah 1981).

14.     In determining whether a sale of assets outside of the debtor's ordinary course of business is appropriate, courts often look to the following factors:

> The proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.

In re Lionel Corp., 722 F.2d at 1071.  See also In re Weatherly Frozen Food, 149 B.R. 480  (Bankr. N.D. Ohio 1992); Matter of Baldwin United Corp., 45 B.R. 385 (Bankr. S.D. Ohio 1984).

15.     The Trustee submits that the factors set forth in Stephens are met and that a sale as set forth herein is a sound exercise of the Trustee's business judgment.

16.     As stated above, the Trustee previously requested Court approval of Bid Procedures.  During the last 12 months the Trustee has actively marketed and pursued potential purchasers for the Purchased Assets.  To date, the Trustee received 67 Confidentiality Agreements from interested parties.  Many parties performed extensive due diligence on the Debtors.  The Trustee also received 12 Letters of Intent to Purchase the Debtors' assets.  The Trustee is confident that these potential purchasers will have an opportunity to bid on the Purchased Assets, and formulated the Bid Procedures with the objective of promoting active bidding that will result in the highest and best offer the marketplace can sustain for the Purchased Assets.  All interested parties

received the full cooperation in their due diligence efforts from the Trustee and the Trustee's professionals including but not limited to all financial and operational records, lease information, and where requested, personal tours of units and interviews with management and staff.

16. The Bid Procedures were developed consistent with the Stalking Horse Bidder's need to expedite the sale process, but with the objective of conducting the Sale in a controlled fashion which will promote interest in the Purchased Assets while ensuring that the bidders are financially capable and motivated to close the transaction. The Trustee believes that the Bid Procedures for the Auction are commercially reasonable given the long review process by prospective purchasers prior to the acceptance of the Stalking Horse Bid. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith. In re Abbotts Dairies of Pennsylvania, inc., 788 F.2d 143 (3rd Cir. 1986).

## THE SALE OF ASSETS SHALL BE FREE & CLEAR OF ALL LIENS

17. Section 363(f) of the Bankruptcy Code permits the sale of assets of the estate free and clear of any interest in those assets held by a third party. 11 U.S.C. § 363(f)(2). The Trustee therefore requests that the Sale Order provide that the sale of the Purchased Assets is free and clear of any interest held by any third party in any of the assets to be sold, with such liens to attach, as applicable, to the proceeds of sale.

## **PROTECTION UNDER 11 U.S.C.§363(m)**
## **AS A GOOD FAITH PURCHASER**

18.     The Trustee also requests the Sale Order provide the protections afforded under section 363(m) of the Bankruptcy Code, which provide in pertinent part:

> (m) The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C.§363(m)

19.     The sale of the Purchased Assets at Auction in accordance with the Bid Procedures merits a finding that the Purchased Assets were acquired in good faith within the meaning of 11 U.S.C.§363(m).  As detailed earlier, the Trustee aggressively marketed the Sale of the Debtors' assets.  All parties who have executed a Confidentiality Agreement or otherwise expressed any interest in acquiring the business and the assets of the Debtors will received notice of the Sale and have an opportunity to bid at the Auction.  The Trustee shall evaluate each bid prior to and at the Auction in consultation with counsel for the Unsecured Creditors to ensure that the best bid is the Successful Bid.

20.     The Sixth Circuit has indicated that a party would have to show "fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted 'an attempt to take grossly unfair advantage of other bidders'" in order to demonstrate a lack of good faith.  See 255 Park Plaza Assocs. Ltd. Pshp. V. Connecticut Gen. Life Ins., 100 F.3d 1214

(6th Cir. 1996) (citing In re Onouli-Kona Land Co., 846 F.2d 1170, 1173 (9th Cir. 1988)).

21. The Trustee represents that any asset purchase agreement entered into because of the Bid Procedures will be an arm's length transaction, entitled to the protections of section 363(m) of the Bankruptcy Code.

## ASSUMPTION AND ASSIGNMENT, CURE AMOUNTS AND ADEQUATE ASSURANCE

22. Section 365 of the Bankruptcy Code authorizes the assumption or rejection of any executory contract or unexpired lease of a debtor, with some exceptions inapplicable to this case.

23. Courts predominantly apply the "business judgment" test in approving assumption or rejection of contracts or leases.  (In re Kong, 162 B.R. 86, 94 (Bankr. E.D.N.Y. 1993)

24. As detailed above, of the 16 original leases, the Trustee has assumed thirteen leases, and rejected two.  One lease is on extension.  The Trustee has already fixed cure amounts for the assumed leases.  The Cure Amounts will be paid from the proceeds of the sale.  Therefore, the issue in this Sale process involves the assignment of leases rather than their assumption.

25. Section 365(f) of the Bankruptcy Code provides that the assignment of a properly assumed contract or lease can take place if the lease or contract was assumed pursuant to the terms of section 365 of the Bankruptcy Code.

26. The Trustee represents that the assignment of the assumed leases is proper because they were properly and timely assumed pursuant to section 365 of the Bankruptcy Code.

27. Second, all monetary defaults under the Assigned Leases will be cured by payment of the Cure Amounts at closing, if not earlier.

28. Third, the Stalking Horse APA, or the Modified Purchase Agreement, will require that the Successful Bidder be capable of satisfying the adequate assurance conditions of sections 365(b)(i)(c) and 365(f) of the Bankruptcy Code with respect to the Assigned Contracts and Leases. Adequate assurance of future performance is determined on a case by case basis to insure that the other party to the contract or lease gets the benefit of the bargain for which he has contracted. <u>Chera v. 991 Blvd. Realty Corp. (In re National Shoes, Inc.)</u>, 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982). A landlord is not entitled to greater rights than are given by the lease. <u>In re Lafayette Radio Electronics Corp.</u>, 9 B.R. 993 (Bankr. E.D.N.Y. 1981).

29. All bidders must be qualified. This means that the must have the capability to close on the transaction. The Trustee will review the bidders' financial information to confirm their capability to close. Inherent in the Qualified Bidders' ability to close is their ability to operate the locations and to continue to make monthly payment under the leases. The sale of the Purchased Assets contemplates a seamless transition. The Debtors have been able to pay their leases post petition; they will be able to pay them post-sale from ordinary operating receipts.

30.  The Trustee represents that there are adequate business justifications for the assumption and assignment of the Assigned Contracts and Leases and that all requirements to assumption and assignment, including adequate assurance of future performance by any Successful Bidder(s), have been met.

## NOTICE

31.  Pursuant to this Court's Order Establishing Bid Procedures (Doc. 517) separate notice of this Motion has been served, either via overnight mail or regular mail, to all parties in interest. A separate certificate of service evidencing the parties served will be filed with the Court.

**WHEREFORE,** the Chapter 11 Trustee respectfully requests this Court (i) at the conclusion of the Sale Hearing, enter a Sale Order in substantially the form attached hereto as **Exhibit B** (which will be submitted as a separate Exhibit), granting the Trustee the authority to sell the Purchased Assets to the Qualified Bidder(s) whose offer is accepted at the Auction and confirmed at the Sale Hearing; and (ii) grant the Trustee such other and further relief as this Court deems just and appropriate under the circumstances.

Respectfully submitted,

/s/ Monica V. Kindt
Richard D. Nelson (Ohio Reg#0003943)
Donald J. Rafferty (Ohio Reg #0042614)
Monica V. Kindt (Ohio Reg. #0073085)
Cohen, Todd, Kite & Stanford, LLC
250 East Fifth Street, Suite 1200
Cincinnati, Ohio  45202-4157
Attorneys for Chapter 11 Trustee