**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

**Dated: March 11, 2008**

Lawrence S. Walter
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | Case Nos. 06-33124; 07-30312, 07-30313, 07-30315, 07-30113, 07-30114, 07-30115, 07-30117, 07-30118, 07-30119, 07-30120, 07-30124, 07-30125, 07-30126, 07-30127, 07-30128, 07-30129, 07-30130, 07-30131, 07-30133, 07-30134 |
| CLADDAGH DEVELOPMENT GROUP, LLC, et. al. | : | |
| Debtors | : | |
| | : | (Jointly Administered under case no 06-33124) |
| | : | Chapter 11 Proceeding |
| | : | (Judge Walter) |

ORDER: (A) AUTHORIZING THE SALE OF ASSETS PURSUANT TO 11 U.S.C.§363(b), (f) AND (m);  (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C.§365 AND (C) CONTINUING HEARING ON OBJECTIONS TO ASSUMPTION AND ASSIGNMENT OR REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

This matter is before the Court upon the motion (the "Sale Motion") of Richard D. Nelson, Chapter 11 Trustee, for entry of an order (the "Sale Order') pursuant to sections 105(a), 362, 363(b), (f), and (m), 364(c)(1), 365, 1107, 1108, and 1146 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") granting the Trustee the authority to sell substantially all of the Debtors' assets, free and clear of liens, claims, interests and encumbrances, and to assume and assign certain executory contracts and leases (the "Sale") to the Stalking Horse Bidder; Notice of the Sale Motion having been served on all creditors and parties in interest, including all parties who have previously indicated an interest in purchasing the Debtors' assets; and it appearing that proper and adequate notice of the Sale Motion has been given and that no other or further notice is required; and that objections to the Sale Motion were filed by the Official Committee of Unsecured Creditors (the "Committee") (Doc. No. 529), the United States Trustee (the "US Trustee")(Doc. No. 532), Inland US Management, LLC ("Inland")(Doc. No. 522), Capella I NL LLC ("Capella")(Doc. No. 524), Westfield Franklin Park Mall, LLC ("Westfield") (Doc. No. 526), Legacy Village Investors, LLC ("Legacy Village")(Doc. No. 530 and 534), Grange Mutual Casualty Company ("Grange")(Doc. No. 535), Precedent Property Owner's Association, Inc. ("Precedent")(Doc. No. 523), JP Morgan Chase Bank NA ("JP Morgan")(Doc. No. 525), Zurich American Insurance Company (Zurich")(Doc. No. 528), and Gordon Food Service ("GFS") (Doc. No. 540), and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A. **Purchaser and Purchase Agreement**

1. The successful bidder for the Sale of the Debtors' assets, set forth in the asset purchase agreement (the "Stalking Horse APA") entered into by the Trustee and the Purchaser on December 12 ,2007 and in certain schedules attached or to be attached thereto (the "Purchased Assets"), is CDG Acquisition LLC ("Purchaser").

2. The Sale of the Purchased Assets to Purchaser was made subject to higher and better offers and certain other sale procedures (the "Sale Procedures") approved by the Court in the Order Establishing Bid Procedures on Trustee's Motion for (1) Approval of Purchaser's Offer to Purchase Assets as Stalking Horse Bid, (2) Approval of Break-up Fee to Stalking-Horse Bidder (3) Scheduling Auction for Sale of Assets, (4) Approving Bidding Procedures for Auction Including Setting of Initial Overbid and Subsequent Bidding Increments, (5) Scheduling Hearing on Approval of Successful Bidder at the Auction, and (6) Setting Objection Deadline (the "Sale Procedures Order")(Doc. No. 517).

3. The Sale Procedures Order scheduled an auction (the "Auction") for the sale of the Purchased Assets to the highest and best bidder for January 16, 2008 at 10:00 a.m. and the hearing on approval of the sale of the Purchased Assets for January 16, 2008 at 2:00 p.m. (the "Sale Hearing").

B. **Jurisdiction, Final Order, Objections and Statutory Predicates**

4. The Court has jurisdiction over this Motion pursuant to 28 U.S.C.§1334. This proceeding is a core proceeding pursuant to 28

U.S.C.§157(b)(2)(A) and (N).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§1408 and 1409.

5. The statutory predicates for the relief sought herein are sections §§105(a), 362, 363(b), (f), and (m), 364(c)(1), 365, 1107, 1108, and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014.

6. The proposed Sale constitutes a sale of property of the estates outside the ordinary course of business within the meaning of Section 363(b) of the Bankruptcy Code.

7. The objections of the Committee and the US Trustee are overruled.

8. The objection of JP Morgan shall be addressed and resolved pursuant to a separate agreed order to be submitted.

9. The objection of Precedent is deemed resolved as set forth herein.

10. The objections of Inland, Capella, Westfield, Legacy Village, Grange, GFS and Zurich (the "Pending Objections") are reserved and continued to a hearing to be scheduled in the event they are not resolved by agreement.

11. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §158(a).  The Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set for the herein and that the 10-day stay imposed by Bankruptcy Rule 6004(g) be deemed waived.

### C.     Notice of Sale of the Purchased Assets

12. The Trustee complied with all the procedures for notice of the Sale Motion, the Sale Procedures, the Auction, and Sale Hearing set forth in the Sale

Procedures Order. The Sale Notice approved in the Sale Procedures Order was served upon all parties in interest, including all parties asserting any lien or interest in any of the Purchased Assets or any of the Debtors' leases and other executory contracts, all creditors listed on all Debtors' mailing matrixes, all parties who filed a notice of appearance in this case, counsel for the Committee of Unsecured Creditors, the Office of the United States Trustee, and every party who either submitted a Confidentiality Agreement, a Letter of Intent, or otherwise indicated an interest in acquiring the Purchased Assets.

13. The Court finds that Notice of the Sale Motion, the Auction, and the Sale Hearing as described above, was proper, timely, adequate, sufficient, proper under the circumstances, in compliance with Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and no other or further notice is required.

14. A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, and the right of third parties to submit higher or otherwise better offers for all or any portion of the Purchased Assets in accordance with the Bidding Procedures approved by the Court, has been afforded to all interested persons and entities.

D.   **Good Faith of Purchaser**

15. Purchaser's sole member is Supermac's Ireland Limited ("Supermac's") or Pat McDonagh ("Mr. McDonagh"). Supermac's is a DIP financing lender to the Debtors and Supermac's or Mr. McDonagh is the holder of a nonpriority unsecured claim against the Debtors in the amount of $26,612,695.

Mr. McDonagh and his wife are the 100% owners of Supermac's. Mr. McDonagh is also the holder of 50% of the equity interests in the Debtors.

16. Purchaser and its respective representatives, attorneys, agents and advisors have at all times acted in good faith in all respects relating to the sale of the Purchased Assets pursuant to the Stalking Horse APA, which was negotiated and entered into by the parties in good faith and from arm's length bargaining positions and Purchaser therefore qualifies as a good faith purchaser within the meaning of 11 U.S.C.§363(m), and is therefore entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with the proceeding.

17. The Trustee aggressively marketed the Sale of the Purchased Assets. All parties who executed a Confidentiality Agreement or otherwise expressed any interest in acquiring the business and the Purchased Assets of the Debtors received notice of the Sale and had an opportunity to submit a competing bid. The Sale to Purchaser constitutes an arm's length transaction, entitled to the protections of section 363(m) of the Bankruptcy Code.

18. Neither the Trustee, the Debtors nor any of their respective representatives, attorneys, agents and advisors, have colluded with the Purchaser, its representatives, attorneys, agents and advisors or in any manner whatsoever violated the provisions of Section 363(n) of the Bankruptcy Code.

**E.    Competing Offers**

19. No competing offers for the Purchased Assets were received by the Trustee prior to the Sale Hearing.

**F.     Approval of Motion**

20.     The terms of the Stalking Horse APA are fair and reasonable under the circumstances of these Chapter 11 Cases and these proceedings, and correspond to current market standards.  The terms constitute the highest and best offer obtainable for the Purchased Assets and are fair and adequate.  The Sale Procedures approved by the Court afforded a full, fair, and reasonable opportunity for any party to make a higher or otherwise better offer for the Purchased Assets.

21.     The consideration for the Purchased Assets set forth in the Stalking Horse APA (i) is fair and reasonable, (ii) represents the highest and best offer for the Purchased Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable state and federal law.

22.     The Trustee has full power and authority to execute and deliver the Stalking Horse APA and all other documents contemplated thereby and to otherwise transfer the Purchased Assets to Purchaser, free and clear of all liens, claims and encumbrances; and no further consents or approvals are required for the Trustee, on behalf of the Debtors, to consummate the transactions contemplated in the Stalking Horse APA.

23.     The Motion should therefore be approved as it is in the best interests of the creditors, and the Debtors' estates.

**G.     Section 363 Sale**

24.     The Sale of the Purchased Assets to Purchaser, pursuant to Sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, is free and clear of

all liens, claims, encumbrances or interests held by any third party in any of the Purchased Assets with those interests to attach to the proceeds of the Sale in the same order and with the same priority as they currently hold.  Neither the Sale nor this Order shall impair or extinguish the land covenants and obligations to which Precedent is entitled to enforce under applicable state law against the owner of the property subject to such covenants and obligations.

25.     The Trustee has articulated sound business justification for the sale of the Purchased Assets to Purchaser free and clear of all claims, liens, encumbrances, liabilities, and interests pursuant to the Stalking Horse APA and it is a reasonable exercise of the Trustee's business judgment to consummate the sale of the Purchased Assets to Purchaser and to execute, deliver, and perform his obligations under the Stalking Horse APA.

26.    The execution, delivery, and performance by the Trustee of the Stalking Horse APA in accordance with its terms is in the best interest of the Debtors, their creditors and other parties in interest.

### H.    Assumption and Assignment of Leases and Contracts

27.    Certain landlords and parties to other executory contracts of the Debtors filed objections to the Sale Motion.

28.    Purchaser has not yet exercised its rights under the Stalking Horse APA to designate the Debtors' leases and other executory contracts for assumption and assignment or rejection.  Purchaser continues to reserve that right and will designate such leases and executory contracts prior to closing of the Sale.  In the event that the Pending Objections are not resolved consensually

or other parties to leases or executory contracts that Purchaser designates for assumption and assignment or rejection object to such assumption and assignment or rejection, then the Court will conduct a hearing to determine such objections. All Pending Objections are hereby reserved. In the event that the Pending Objections and any issues and claims relating to or arising from the Purchaser's designation of leases and executory contracts for assumption and assignment or rejection are resolved consensually then the consensual resolution shall be presented to the court in a proposed order without any further hearing.

29. Any leases or contracts designated by Purchaser for rejection shall be deemed rejected effective upon written notice by the Trustee to other party to such lease or executory contract, which notice shall be given immediately upon designation by Purchaser unless otherwise directed by Purchaser.

**J.    Miscellaneous.**

30. All findings of fact and conclusions of law announced by the Court at the Sale Hearing on January 16, 2008 in relation to the Sale Motion are hereby incorporated herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.    Consistent with the provisions of this Order, the Sale Motion is hereby GRANTED, the Stalking Horse APA is approved in its entirety, and the performance of the Stalking Horse APA by the Trustee, the Debtors and the Purchaser in accordance with its terms is hereby approved in all respects.  The

Trustee is authorized and directed to implement and perform his obligations under the Stalking Horse APA and to take such other actions reasonably necessary to effectuate its terms, including the execution of deeds, bills of sales, assignments or any other documents required to effectuate the transfers.

  B. All objections to the Motion or the relief requested therein that have not been (a) withdrawn, waived, or settled as announced to the Court at the hearing on the Motion, (b) reserved as detailed in Section H above, or (c) addressed or provided for in other orders of the Court, are hereby overruled on the merits including, without limitation, the objections of the Committee and the US Trustee.

  C. Pursuant to Sections 105 and 363 of the Bankruptcy Code, except as otherwise provided in the Stalking Horse APA and this Order, the Purchased Assets shall be sold, conveyed, granted, assigned, transferred, and delivered by the Trustee to the Purchaser or any of its affiliates, subsidiaries or assignees designated by Purchaser to take title to and/or possession of any of the Purchased Assets under the Stalking Horse APA free and clear of any and all encumbrances, claims, liens, mortgages, security interests, restrictions, prior assignments, obligations, pledges, charges and liabilities against the Debtors or the Purchased Assets. Any such interests shall attach to the proceeds of the Sale contemplated by the Stalking Horse APA to the same extent and with the same validity and priority as such interests had with respect to the Purchased Assets. No entity shall interfere with or delay the transfer of the Purchased

Document    Page 11 of 16

Assets (including liquor permits) because of any unpaid claim against the Debtors.

D.     Potential bidders had adequate notice of the bid deadlines, the proposed Auction, and the Sale Hearing and were given an adequate opportunity to make competing bids.  All entities claiming liens claims, encumbrances or interests in or against the Purchased Assets had adequate notice of the Sale, the Auction and the Sale Hearing.

E.     The Stalking Horse APA is hereby approved in all respects, and shall be deemed in full force and effect, binding and benefiting the Trustee, the Debtors, the Debtors' Estates, and the Purchaser, subject only to the provisions of this Sale Order.

F.     All entitles are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee or the Debtors to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Stalking Horse APA and this Order.

G.     The purchase price to be paid pursuant to the Stalking Horse APA for the Purchased Assets is fair and reasonable, in accordance with current market standards, and constitutes reasonably equivalent value and fair consideration.   Neither the Trustee, the Debtors nor any of their respective representatives, attorneys, agents and advisors, have colluded with the Purchaser, its representatives, attorneys, agents and advisors  or in any manner whatsoever violated the provisions of Section 363(n) of the Bankruptcy Code and therefore the Sale and the transactions contemplated in the Stalking Horse APA

are not subject to challenge under Section 363(n) of the Bankruptcy Code. The Trustee is authorized to implement and consummate all of the transactions and perform the obligations contemplated by the Stalking Horse APA, including, without limitation, (i) the sale of the Purchased Assets to Purchaser and the assumption and assignment or the rejection of all leases and other executory contracts as designated by Purchaser which are either resolved consensually with the other parties to such leases and executory contracts or as may be determined by the Court at a hearing on any proposed assumption and assignment or rejection, for the Purchase Price set forth in the Stalking Horse APA, and (ii) the delivery of special warranty deeds, bills of sale, assignments, and all other necessary documentation to effectuate the Sale.

      H.     At closing, pursuant to the Stalking Horse APA, the Trustee shall deliver title to and possession of the Purchased Assets free and clear of liens pursuant to Section 363(f) of the Bankruptcy Code, with the exception of any Assumed Liabilities and Assumed Debt as set forth in the Stalking Horse APA.

      I.     Notwithstanding any contrary provisions of law, the Debtors' licenses, including those relating to liquor licenses in all jurisdictions required for Purchaser or any of its affiliates, subsidiaries or assignees to conduct business with the Purchased Assets after the Closing, shall be transferred to the Purchaser or to any of its affiliates, subsidiaries or assignees that it designates (collectively referred to herein as "Purchaser"), free and clear of all liens, claims and encumbrances of any public or private person or entity, and the Trustee shall cooperate with Purchaser and execute all other and further documents and take

such other actions as may be necessary or appropriate to consummate such transfers and ensure that such transfers are recognized by applicable governmental entities.

J. The Purchaser is not a mere continuation of the Debtors nor does the Purchaser constitute a successor to the Debtors. Purchaser is not expressly or impliedly agreeing to assume any of the Debtors' liabilities, leases, or contracts, unless specifically enumerated in the Schedules to the Stalking Horse APA. The Purchase does not constitute a merger or de facto merger of the Debtors and the Purchaser. The transaction contemplated in the Stalking Horse APA are not entered into fraudulently or in order to escape liability from the Debtors' debts.

K. Purchaser shall not be deemed to have assumed any liabilities of the Debtors except as specifically detailed in the Stalking Horse APA.

L. Purchaser shall not be liable for any claims against the Debtors or any of their predecessors or affiliates. Purchaser shall have no successor or vicarious liabilities of any kind resulting from the transaction contemplated by the Stalking Horse APA, or from any action of the Debtors or their agents.

M. This Order shall be binding in all respects upon the Trustee, the Debtors, their estates, all creditors thereof, and holders of equity interests, whether known or unknown, in any of the Debtors, all governmental units with claims against the Debtors, any holders of liens, claims, encumbrances or interests in or against the Purchased Assets, all non-Debtor parties to any leases or executory contracts assumed and assigned to Purchaser or rejected by the

Trustee, all successors and assigns of the Purchaser, each Debtor and their affiliates and subsidiaries, and any future or subsequent trustees in either Chapter 11 or 7 of the Bankruptcy Code.

    N.    All entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.

    O.    The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code with respect to the negotiation of the Stalking Horse APA, the acquisition of the Purchased Assets, the assumption and assignment or rejection of leases and other executory contracts and all matters related to the foregoing and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

    P.    Pursuant to Rules 7062, 9014, 6004(h), and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Order shall be effective immediately upon entry and the Trustee is authorized to close the Sale immediately upon entry of the Sale Order.

    Q.    Pursuant to section 1146 of the Bankruptcy Code, the transfer of the Purchased Assets, and the execution and delivery of any instrument of transfer by the Debtors, shall not be taxed under any law imposing a transfer tax, a stamp tax, or a similar tax.

    R.    A certified copy of this Order may be filed with the appropriate Clerk and/or recorded with the Recorder to act to cancel any liens or claims of record.

S. The automatic stay provisions of section 363 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Stalking Horse APA and the provisions of this Order.

T. This Order is and shall be binding upon all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental units and departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law or their duties of their office, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure and title.

U. There are no brokers involved in consummating the Sale and no brokers' commissions are due.

V. The failure to specifically include any particular provision of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse APA be authorized and approved in its entirety.

W. The Stalking Horse APA and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

X.  Pursuant to, and to the extent necessary under Bankruptcy Rules 5003, 6004(h), 6006(d), 7062, 9014, 9021, and 9022, the Court hereby expressly finds and concludes that there is no just cause for delay in the implementation of this Sale Order.  This Sale Order therefore shall not be stayed for ten (10) days after its entry.  This Sale Order shall be effective and enforceable immediately upon entry, and any stay thereof, including without limitation pursuant to Rule 6004(h) and Rule 6006(d), is hereby abrogated.

Y.  After the Closing Date, the Chapter 11 Trustee shall retain the proceeds of the sale for future administration in this case.

###